Andrew McClain, J.,
delivered the opinion of the Court.
*238 In 1827, Oliver 0. Johnson married Melissa Clay, the daughter of Joshua Clay. Melissa Johnson gave birth to a child, which died in 1829. In the year previous to the death of the child, the mother, Melissa, died.
Previous to the marriage of Melissa with Johnson, her father Joshua Clay, had given to her the girl Harriet, in controversy in this suit. This negro was then a child. This gift was in parol and the daughter lived in the family of her father.
It is in proof that her father gave to her this negro in consequence of her attention to it, it being a child of ill-health.
Prior to the passage of the Act of 1831, it was held, under the Act of .1784, that a verbal gift of a slave, accompanied with possession, communicated title, and was good as between the parties: Payne vs. Lassiter, 10 Yer., 512; Davis vs. Mitchell, 5 Yer., 282.
Before the marriage ceremony was solemnized between Melissa Clay and Johnson, a marriage contract was entered into by which this negro, Harriet, was to remain the separate property of the wife, Melissa, free from liability for the debts of the husband. Upon cop-summation of the marriage, Harriet went into the possession of Johnson.
Melissa Johnson having died in 1828, in 1829 Johnson married another daughter of Joshua Clay, viz.: Eliza.
Joshua Clay gave to this daughter, a negro girl named Melinda, which also went into the possession of Johnson.
*239 Johnson moved to Humphreys County and carried' with him the two negroes, Harriet and Melinda.
He died in Humphreys County, in 1832.
It has been insisted in argument that the gift of Harriet to Melissa Clay, before her marriage, was valid, and vested in her the title, and that the marital right of Johnson did not attach in consequence of the. marriage contract, but that, on the death of the mother, Melissa, the title descended to her infant child;- and that when this child died,' in 1829, the title passed to the father, Oliver C. Johnson, the father of complainants.
The same result is reached if it be considered that the gift was first made after the marriage of Melissa with Johnson. For possession having then been delivered the marital right of Johnson would attach and continue till his death.
Eliza, the second wife of Johnson, had two children, Henry O. and Anthony W. Johnson, who were the original complainants in this suit.
Henry O. was bom in 1830, and Anthony W. was born in 1832.
Mrs. Johnson administered on the estate of her husband, and there appeared to have been left a small amount, upon settlement of the estate, without taking Harriet and Melinda into the account, who were not embraced in the inventory.
After the death of Johnson, Mrs. Johnson moved back to Eutherford County, bringing with her the two negroes, Harriet and Melinda. ■
*240 • In- 1833 she sold Melinda, and with the proceeds bought furniture.
In 1836, she married Robert Espy, the defendant in this cause.
By this marriage she had the other three defendants, John A. Espy, Robert A. Espy, and William I. Espy.
Espy took the girl, Harriet, into his possession, and she remained in his possession till the death of his wife, Eliza, which occurred in 1849, and from that time ■till this suit was commenced, which appears to have been in 1853.
This bill was filed by Henry O. and Anthony W. Johnson, the children of Eliza and Oliver C. Johnson, against Robert Espy, the second husband of Eliza, the ■mother of complainants, to recover the negro, Harriet, and her increase; and, also, the hire from 1836, the date of the marriage of Espy with complainant’s mother.
This claim is resisted by Espy. He insists that the negro, Harriet, was not given to Melissa; but, that after she went into the possession of Johnson, the title of Joshua Clay was recognized while Johnson lived, and that he has held her and her increase adversely from the date of his marriage with Eliza.
There is some evidence in the record in support of this position; but we think the weight of evidence is decidedly in favor of the position assumed by complainants, that Joshua Clay intended to give the girl, Harriet, to his daughter.
At the death of Johnson, in 1832, the title to Har *241 riet rested in the widow, Eliza, and her two children, Henry O. and Anthony W.
It appears that Harriet and Melinda were not required to pay debts.
The title never vested in Eliza, as administratrix, at any time.
In the case of Savage, Adm’r, vs. Hale and Coggin, 1 Sneed, 367, it is held, that since the Act of 1827, chap. 61, (Car. and Nich., 82,) the title to slaves does not pass to the personal representative, as before that Act was the case as to all personal property, but to the distributees, as land goes to the heirs on the death of their ancestor, with no other exception but that the administrator is bound to take possession of them, and if not required to pay debts, to distribute them.
As to the statute of limitations, it is sufficient to say that Henry O. and Anthony W., were minors, and this suit was commenced before even the oldest was twenty-four years of age.
As to the girl, Malinda, we think she was a gift and not a loan to. Eliza, and consequently the marital right attached to her, so that, at the death of Johnson the title to Malinda also passed to Eliza, the widow, and the complainants, Henry O. and Anthony W.
Malinda was sold by Eliza, the widow, in 1833, before her marriage with defendant, Espy, which occurred in 1836. So this slave never came to the possession of Espy, but Harriet did.
The important question in this case is, whether the *242 marital right of Espy attached to the slave, Harriet, and her increase.
If his marital right could be said to attach to these negroes at all, it could only be, of course, to the extent of the wife’s interest, which was one-third.
There was not at any time, a distribution of the negroes Harriet and her increase, between Eliza and complainants. This being so, there was never at any time, any particular negro or negroes which the husband Espy, could designate as the exclusive property of his wife.
Upon that state of facts the marital right could not attach at all: Swanson vs. Swanson, 2 Swan, 460; Hall vs. McClain, 11 Hum., 425.
The result is, that, upon the death of Eliza, in 1849, the title to her share in these negroes, which was one-third, descended to her two children by the first marriage, Henry O. and Anthony W. Johnson, and to her three children by the marriage with Espy, viz: Robert A. Espy, John C. Espy and William J. Espy. All her children were entitled each to one-fifth of her third, which is one-fifteenth of the whole.
This one-fifteenth, added to the share of each of the Johnson children, which was already one-third, would raise each of these shares to two-fifths.
Anthony W. and Henry O. Johnson both died since the commencement of this suit, and Alexander Wheless is their administrator.
Robert A. Espy, one of the children of Eliza, has also died, and his father, the defendant Robert Espy, is his administrator.
*243 The title to the shares of each of these deceased children passed under the statute of distribution, the whole and half blood being entitled to inherit alike.
The negroes being now free, the hire is the only subject of litigation.
The right to this,- however, must be controlled by the same rules of distribution which would have governed in reference to the negroes themselves had they not been emancipated.
It is to be observed, however, that Robert Espy will be liable for only two-thirds of the hire during the life of the wife, after he got them into his possession.
If Espy had hired the negroes to others and had received the hire,, it is plain that (one-third of the hire being the property of the wife) his marital right would have attached to that. But having had the negroes in possession, and in that way having received the hire, he will not be accountable for the wife’s share of the hire during her life. At her death, this one-third interest in the negroes having passed to her Johnson and Espy children, they will be entitled to share one-third of the hire, from her death, alike.
The Chancellor’s decree is based upon the idea that Mrs. Johnson, having sold Malinda, who was more valuable than Harriet, and in that way received more than her share, that complainants, Henry O. and Anthony W. have in equity, an exclusive right to Harriet and her increase and hire.
If this was a suit between the complainants, Henry O. and Anthony W., and their mother, Eliza, we are not prepared to say that this view of the Chancellor *244 was not correct; but this is a suit between Henry 0. and Anthony W., and the husband of Eliza, and her Espy children.
We do not perceive how the sale of Malinda could operate to divest Eliza of her title to one-third of Harriet. The title to Harriet remained the same after the sale of Malinda, as it did before. If Mrs. Johnson, after the sale of Malinda, had next proceeded to sell Harriet also, the purchaser of Harriet would have got as. good title- to this negro as the purchaser of Malinda did to Malinda. The title to neither would have been good for more than oné-third, that being the interest of Eliza.
When Espy married Eliza, although his marital right did not attach to the negro, from the fact there had been no distribution between Eliza and her two Johnson children, still his right did attach to one-third of the hire, and, at her death, this interest of one-third in the negroes descended to the Espy children, alike with the Johnson children.
The decree of the Chancellor will be modified according to the views expressed in, this opinion, and' in all other things affirmed.
Let the account be taken accordingly.